**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **MOLLI CHANG**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**CHRISTOPHER JACKSON, et al.,**<br><br>**Defendant.** | **Case No.: 8:22-cv-02208-GLS** |

**DEFENDANT WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY'S MEMORANDUM IN SUPPORT OF THEIR MOTION *IN LIMINE* TO PRECLUDE PLAINTIFF'S COUNSEL FROM IMPROPERLY PREJUDICING THE JURY BY USING TRIAL TACTICS BASED ON THE "REPTILE THEORY"**

Defendant Washington Metropolitan Area Transit Authority, by and through undersigned counsel, and hereby respectfully request this Honorable Court issue an Order precluding Plaintiff's counsel from improperly prejudicing the jury by using trial tactics based on the "Reptile Theory." In support thereof, states as follows:

## I. INTRODUCTION

WMATA submit this memorandum in support of their Motion in order to preclude Plaintiff's counsel from employing at trial the "Reptile" litigation strategy outlined in detail in a book entitled *Reptile: The 2009 Manual of the Plaintiff's Revolution*, by attorney Don Keenan and jury consultant David Ball. *See* Reptile Manual, a copy of which is attached as **Exhibit 1**. A brief summary of the "Reptile" theory is necessary to demonstrate to the Court why these tactics are prejudicial and should be barred under Maryland law.

### Summary of the "Reptile Theory"

In *Reptile*, Authors Ball and Keenen explain that the trial goal of a plaintiff's attorney should be to place the jurors in a "reptilian" survival mode. *Id*. at 18. Neuroscientist Paul MacLean

initiated this concept, arguing that people are driven by the "reptilian" portion of their brains, which houses the traits humans share with reptiles, namely basic life functions such as breathing, hunger, and the most fundamental of all of them: survival. *Id*. at 13, 17.

In a chapter entitled "Safety Rules and the Reptile," the authors detail the "umbrella rule," explaining that every case needs such a rule to properly trigger the jury's survival instincts. This umbrella rule can be applied to nearly any case, explained as follows: "A driver [or physician, company, policeman, lawyer, etc.] is not allowed to ***needlessly endanger*** the public." *Id.* at 55 (emphasis added).

Focusing the umbrella rule on motor vehicle accident cases, a subchapter entitled "Without Standard of Care" explains how the umbrella rule can be used to manipulate the standard of care. Specifically, the authors explain the following:

> Anyone who does something careless that hurts anyone else is responsible for the harm. That is our social contract with each other, and it is the law – so it is a real contract. Explain it. Explain that when a driver [or whoever] gets behind the wheel [or does whatever], she implicitly agrees – in advance – to be responsible for any harm she does if she violates any safety rules…
>
> Violating that agreement and getting away with it leaves people free to violate more safety rules. The Reptile forbids that…
>
> ***And no matter what other drivers [or pedestrians] do***, when a driver violates a safety rule…she has agreed in advance to accept responsibility for any harm she does. *Id. at 68-69*

*Id.* at 68-69 (bolded emphasis added).

The authors encourage plaintiff's attorneys to present case-specific safety rules once the umbrella safety rule has been established. *Id*. at 57-85. In this way, the plaintiff's counsel presents the case-specific safety rule as a subset of the umbrella rule, which allegedly protects everyone, not only someone in the position of the plaintiff during the time period relevant to the case. *Id.* at 58; *see*

*also id.* at 52 (safety rule "must protect people in a wide variety of situations, not just someone who was in your client's situation"); *id.* at 55 ("Show that the defendant, by trying to escape responsibility for choosing to violate a public-safety rule, is further endangering the community, and showing others that they too can get away with it."). The intent is to inspire the jury to return a verdict for the plaintiff based on emotion and out of fear for their safety and the safety of their community, overriding any reason and disregarding the evidence and required elements of a negligence claim.

## II. ARGUMENT

The authors of *Reptile* encourage plaintiff attorneys to "spread the tentacles of danger" beginning in *voir dire*, opening statement, and throughout the trial as a means to manipulate the jurors into a favorable verdict. *Id.* at pp. 35, 58, 138. WMATA seeks through this motion a pre-trial ruling prohibiting Plaintiff, through counsel, from presenting any evidence, argument, or questioning during trial premised on the "Reptile theory." Granting this request ensures that irrelevant and prejudicial information is not submitted to the jury in the form of arguments or evidence about an elevated standard of care.

Under the Federal Rules of Evidence, "relevance requires only that the proffered evidence tends to make the existence of a fact in issue more or less probable that without the evidence." *See* Fed. R. Evid. 401. Evidence is not admissible when it does not meet this definition. Additionally, the policy set forth in Federal Rule of Evidence 403, requires the judge to assess whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, which means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one. *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 584 (D.Md 2007)(citing Fed. R. Evid. 403 Notes of Advisory Committee on Rules). WMATA submits that

evidence or argument based on the "Reptile theory" is not relevant to the jury's task of determining whether WMATA breached the applicable standard of care in this case. Evidence or argument premised on the "Reptile Theory" would serve only to divert the jury's attention from the relevant evidence in this matter and prejudice WMATA.

As outlined above, the "Reptile Theory" is designed to redefine the standard of care in a negligence case such as this one. The authors of *Reptile* specifically urge plaintiffs' attorneys to elicit testimony in such a way as to confuse the jury into believing the standard of care can only mean the "safest possible choice." *Reptile*, p. 63. This is not the standard of care in this jurisdiction.

In a vehicular tort action in Maryland, the plaintiff must show 1) that the defendant was under a duty to protect the plaintiff from injury, 2) the defendant breached that duty, 3) that the plaintiff suffered actual injury or loss, and 4) that the loss or injury proximately resulted from the defendant's breach of the duty. *Hamilton v. Kirson*, 96 A.3d 714, 727, 439 Md. 501, 523-24 (2014). However, the "mere happening of an accident does not constitute proof of negligence." *Risaino v. Flannery*, 564 A.2d 790, 794, 317 Md. 452, 459 (1989); *see also Naylor v. Washington Metro. Area Transit Auth.*, No. TJS-23-00730, 2024 U.S. Dist. LEXIS 72431 at *3 (D.Md April 22, 2024). By contrast, the "Reptile Theory" specifically seeks to ignore this standard and instead, convert the claim into what is in essence a strict liability finding whenever a defendant chooses any option that does not constitute "the safest possible choice" without regard to other acceptable choice under the circumstances.

## III. <u>CONCLUSION</u>

"Reptile" litigation tactics seek to introduce irrelevant evidence and arguments to the jurors that serve no purpose but to inflame their passions, subvert, and confuse the standard of

care, and prejudice WMATA. WMATA is entitled to a jury that can dispassionately weigh the evidence and decide whether Plaintiff meets the burden of proof imposed under Maryland law.

WHEREFORE, for the foregoing reasons, WMATA respectfully requests that the Court grant their Motion *In Limine* and preclude Plaintiff's counsel from pursuing any line of questioning or argument consistent with the "Reptile Theory" as outlined in the instant motion.

Dated: February 9, 2026

Respectfully submitted,

**WILSON ELSER MOSKOWITZ**
**EDELMAN & DICKER, LLP**

*/s/ Patricia H. Beall, Esq.*
Patricia H. Beall, Esq. (MD Bar No.: 29593)
Nathan R. Lefko, Esq. (MD Bar No.: 30994)
1500 K Street, NW, Suite 330
Washington, D.C. 20005
Telephone: (202) 626-7660
Facsimile: (202) 628-3606
Patricia.Beall@wilsonelser.com
Nathan.Lefko@wilsonelser.com

Jason R. Waters, Esq. (MD Bar No.: 27867)
8444 Westpark Drive - Suite 510
McLean, VA 22102-5102
Telephone: (703) 245-9300
Facsimile: (703) 245-9301
Jason.Waters@wilsonelser.com
*Counsel for Defendant Washington Metropolitan Area Transit Authority*

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY**

Laurie Hand, Esq. (MD Bar No.: 11470)
WMATA, Legal Department 7E,
P.O. Box 23768
Washington, D.C. 20026-3768
Telephone: (202) 962-5063
Facsimile: (202) 962-2550
LAHand@wmata.com
*Counsel for Defendant Washington Metropolitan Area Transit Authority*